DJW/bh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FORECLOSURE MANAGEMENT CO.,

                **Plaintiff,**                    **Civil Action**

v.                                          **No. 07-2388-DJW**

ASSET MANAGEMENT HOLDINGS, LLC,

                **Defendant.**

_____

ASSET MANAGEMENT HOLDINGS, LLC., et al.,

                **Counterclaimants,**

v.

FORECLOSURE MANAGEMENT CO.,

                **Counterclaim Defendant.**

## <u>MEMORANDUM AND ORDER</u>

       Pending before the Court is the Motion to Compel Production of Documents (doc. 27) by Defendant/Counterclaimant Asset Management Holdings, LLC ("Asset Management").  For the reasons set out below, the Motion is granted in part and denied in part.

**I.**      **Background Information**

       This is a diversity action in which Foreclosure Management Co. ("FMC") sues Asset Management for breach of contract.  Asset Management owns various assets, including mortgages on real estate, in many states throughout the United States.  Prior to June 2007, Asset Management retained FMC to perform certain services in the process of foreclosing on properties.  Asset Management submitted files to FMC for processing, and FMC sent Asset Management invoices for

the services FMC rendered on Asset Management's behalf.  FMC performed some services in-house and outsourced other services to third-party vendors.  FMC selected and hired local attorneys to handle foreclosure and bankruptcy proceedings for Asset Management in the various jurisdictions in which Asset Management's mortgages were being foreclosed.

FMC contends that it entered into an oral contract with Asset Management for Asset Management to provide these services.  FMC also contends that the parties agreed to a written price list that dictated the prices FMC would charge Asset Management for providing the particular services.  FMC further contends that it advanced payment for certain expenses on account and that Asset Management agreed to pay those expenses according to FMC's invoice terms.  FMC alleges that Asset Management failed to pay various invoices, and it bring this action against Asset Management for breach of contract to recover unpaid invoices totaling $142,467.46.

Asset Management disputes FMC version of the parties' contract.  While it agrees that some services were to be billed pursuant to a flat fee schedule, it contends that other services and items were to be billed at cost.  Asset Management asserts counterclaims against FMC, alleging that FMC improperly invoiced it for services that were never performed, for the same services multiple times, for services and expenses that Asset Management never agreed to pay for, for amounts that exceeded the amounts listed on the price list, for amounts that exceeded those FMC paid to its outside vendors (including local counsel), and for work that FMC was not legally authorized to perform.  Asset Management asserts counterclaims against FMC for tortious interference with business expectancy, fraud, professional negligence, breach of contract, and unjust enrichment.

## II.     Asset Management's Motion to Compel Production of Documents

Asset Management moves to compel FMC's responses to Requests for Production No. 6, 8,

9, and 10.  After Asset Management filed its Motion to Compel and before FMC filed its opposition

brief, FMC served supplemental responses to the requests at issue.  Asset Management filed a reply

brief, addressing the supplemental responses.  The Court will, where appropriate, consider the

supplemental responses in deciding the Motion to Compel.

### A.    Request No. 6

This request asks FMC to produce "all document to or from any client of FMC concerning

allegations of improper charges for services not performed, services needlessly performed, or

services billed at rates contrary to FMC's stated or agreed rates."  FMC initially responded as

follows:

> FMC objects to this request because it is irrelevant, overly broad, unduly vague
> and/or ambiguous, burdensome and oppressive, and not likely to lead to discoverable
> evidence.  Services charged to other clients by FMC bear no relation to this matter.
> To the degree this request is not objectionable as it applies to [Asset
> Management]/FMC matters, such documents are produced as part of Response to
> Request No. 11.[1]

In its supplemental response to Request No. 6, FMC stated:  "Without waiving any of its

prior objections, FMC states that there are no documents responsive to this request within its

possession, custody or control."  In its Response to the Motion to Compel, FMC argues that the

Motion to Compel is moot, asserting again that "there are no . . . documents responsive to Request

No. 6."[2]

In its reply brief, Asset Management disputes that this issue is moot.  Asset Management

---

[1]Request No. 11 asked FMC to produce all communications between FMC and Asset Management.
FMC asserted no objections to Request No. 11 and indicated it would produce the requested
documents.

[2]Resp. to Mot. to Compel (doc. 35) at p. 3.

contends that because FMC's supplemental response is subject to FMC's previous objections, it is impossible to discern whether (1) no responsive documents exist at all, or (2) responsive documents exist but are being withheld on the basis of FMC's earlier asserted objections.

In addition, Asset Management states that after receiving FMC's supplemental response to Request No. 6, it discovered, through its own efforts, documents that were responsive to this request. FMC explains that, after receiving FMC' supplemental response, it discovered a court filing by a former client of FMC in which the client made allegations similar to those asserted in Asset Management's counterclaims, i.e., that FMC had provided services to a client that the client did not request or did not need. Asset Management believed that documents pertaining to those allegations should have been produced in response to Request No. 6. Asset Management states that it conferred with FMC about those allegations and documents, and, as a result, FMC supplemented its response to Request No. 6 for a *second* time, stating: "Without waiving any of its prior objections, FMC will produce responsive documents."

Asset Management contends that because FMC's response *continues* to be subject to its initial objections, it remains unclear whether FMC is withholding additional responsive documents based on its earlier asserted objections. Asset Management therefore asks in its Reply that FMC be ordered to certify to the Court that it is not withholding any documents responsive to Request No. 6 based on its prior objections to the request.

The Court agrees that FMC's supplemental responses are ambiguous. The Court therefore directs FMC to serve an amended response to Request No. 6 in which it clarifies whether it is withholding any documents responsive to the request based on its earlier asserted objections. If FMC's amended response indicates that it is withholding documents, then the parties shall confer,

and, if necessary, Asset Management may file a supplemental motion to compel relating to those documents.  FMC shall file its amended response to the request within **ten (10) days** of the date of filing of this Order.  Any conferring shall take place within **ten (10) days** thereafter, and, if necessary, any motion to compel regarding Request No. 6 shall be filed within **five (5) days** after the parties have conferred.

Asset Management also asks in its Reply that the Court order FMC to certify "that *all* of its discovery responses are true and correct and complete."[3]  In support of this request, Asset Management states that FMC on one other occasion represented that all responsive documents had been produced in response to Request No. 2, when in fact they had not.  While FMC initially responded that it had no documents responsive to Request No. 2, at a subsequent deposition, an FMC witness testified that FMC did in fact have responsive documents, and FMC subsequently produced those documents.

The Court will decline to enter such an order, as it would be based upon nothing more than speculation that FMC has not responded correctly and fully to Asset Management's requests.  FMC is reminded, however, that it has a duty under Rule 26(e) to supplement any response to a Rule 34 document request if it learns in some material respect that the response is incomplete or incorrect and if the additional or corrective information has not already been made known to Asset Management.[4]

---

[3]Reply in Supp. of Mot. to Compel (doc. 47) at p. 3.

[4]Rule 26(e) provides that a party who has made a disclosure under Rule 26(a) or who has responded to a written discovery request "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

**B.      Request No. 8**

Request No. 8 asks FMC to produce the following:

> [A]ll documents concerning services performed by third-parties and billed or invoiced by FMC relating to Asset Management's properties, including but not limited to "local" counsel, title services, service of process, delivery services of any kind (U.S. Mail, FedEx, etc.), eviction services, and "skip" tracing or other methods of locating persons.

FMC objected to this request on grounds that it is overly broad, "unduly vague and/or ambiguous," burdensome and oppressive.  It also stated that many of the requested documents are not in its possession, custody, or control.  FMC further objected that the requested documents are irrelevant and that the request is not calculated to lead to the discovery of admissible evidence because Asset Management does "not allege the existence of a cost-plus contract on the 400+ files that FMC handled" for Asset Management.

   *1.      Relevance*

The Court will first consider FMC's objection that the requested documents are irrelevant and not calculated to lead to the discovery of admissible evidence.

   *a.      The standard for determining relevance*

Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[5]  Relevancy is broadly construed, and, thus, "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may

---

[5]Fed. R. Civ. P. 26(b)(1).

be relevant to the claim or defense of any party."[6]   In other words, a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing on the claim or defense of a party."[7]   To determine whether discovery is relevant, the court will examine the issues raised in the case.[8]   Although relevancy is not limited by the matters stated in the pleadings, they do provide a basis from which to judge relevancy.[9]   In making its determination, the court must keep in mind that a party does not have to prove a prima facie case as to its claim or defense in order to justify a discovery request that appears reasonably calculated to lead to the discovery of admissible evidence.[10]

   When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[11]   Conversely, when the relevancy of the requested documents is not readily apparent, the party seeking discovery has the burden to show how the

---

[6]*Paradigm Alliance, Inc. v. Celeritas Tech.*, No. 07-1121-MLB-KMH, 2008 WL 678700, at *2 (D. Kan. Mar. 7, 2008); *Sheldon v. Vermont*, 204 F.R.D. 679, 689 (D. Kan. 2001) (citations omitted).

[7]*Paradigm,* 2008 WL 678700, at *2; *Sheldon*, 204 F.R.D. at 689 (citations omitted).

[8]*Mackey v. IBP, Inc*., 167 F.R.D. 186, 193 (D. Kan. 1996) (quoting *Caldwell v. Life Ins. Co. of N. Am.*, 165 F.R.D. 633, 638 (D. Kan. 1996)).

[9]*Mackey*, 167 F.R.D. at 193; *Caldwell*, 165 F.R.D. at 638.

[10]*Hammond v. Lowe's Home Ctrs., Inc*., 216 F.R.D. 666, 670 (D. Kan. 2003); *Mackey,*167 F.R.D. at 193.

[11]*Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005); *Hammond*, 216 F.R.D. at 670 (citations omitted).

documents would be relevant.[12]  Courts should lean towards resolving any doubt as to relevance in favor of discovery.[13]

>### b.    The parties' arguments

With these standards in mind, the Court turns to the parties' arguments.  Asset Management argues that the invoices and other documents sought in Request No. 8 will show the factual basis for FMC's charges and therefore relate directly to the claims and defenses asserted by both FMC and Asset Management.  Plaintiff's Petition alleges that Asset Management received invoices from FMC for each transaction and that Asset Management has breached its contract with FMC by failing and refusing to make payment on certain invoices.[14]  Asset Management argues that the requested documents are necessary for it to verify that the alleged services were performed at all and to establish its allegations that FMC "engaged in a pattern of including improper charges on its invoices."[15]  Those allegations form the basis of Asset Management's counterclaims for fraud, breach of contract, professional negligence, unjust enrichment and tortious interference. In short, the requested documents would show the factual basis for FMC's charges and are therefore clearly relevant to the parties' claims and defenses.

In addition, Asset Management argues that "FMC's objection [based on the existence of a cost-plus contract] is factually incorrect because FMC's own invoices *claimed* to bill many services

---

[12]*Cardenas,* 232 F.R.D. at 382-83; *Hammond,* 216 F.R.D. at 670.

[13]*Abraham v. B.G. Boltons' Grille & Bar,* No. 06-1281-MLB-DWB, 2007 WL 1146585, at *5 (D. Kan. Apr. 17, 2007); *Teichgraeber v. Mem'l Union Corp. of Emporia State Univ.,* 932 F.Supp. 1263, 1266 (D. Kan. 1996).

[14]Pl.'s Pet., ¶¶ 4 & 7, attached as Ex. 1 to Notice of Removal (doc. 1).

[15]Mot. to Compel (doc. 27) at p. 5.

at 'cost.'"[16]  Asset Management maintains that the requested documents are relevant because they would show whether the actual charges for any items that were supposed to be billed "at cost" to Asset Management were (1) actually passed through at cost, or (2) improperly inflated by FMC. Asset Management also argues that although FMC denies that it rendered legal services on Asset Management's behalf, the invoices will show that FMC did in fact charge Asset Management for legal services.  Asset Management therefore contends that the documents would be relevant to show that FMC improperly charged it attorney's fees, which are subject to disgorgement or restitution, as pled in Asset Management's breach of professional negligence counterclaim.

FMC counters that the requested documents and invoices are irrelevant because the business relationship between the two parties was not based on a "cost-plus" arrangement but rather a "set fee schedule."[17]  FMC maintains that Asset Management "agreed to compensate FMC based on a set fee schedule for services, and to reimburse FMC [only] for expenses such as newspaper publication, overnight delivery, and sheriffs' fee, which were to be passed through at cost."[18]  FMC contends that Asset Management's position that their agreement was based on cost directly conflicts with all of the evidence in the case.

c.    <i>Analysis</i>

The Court finds that Request No. 8 appears relevant on its face, and, thus, FMC has the burden to show why the documents are not relevant or that any potential harm caused by their disclosure would outweigh the presumption of broad disclosure.  FMC has failed to meet this

---

[16]<i>Id.</i> (emphasis in original).

[17]Resp. to Mot. to Compel (doc. 35) at p. 4.

[18]<i>Id.</i>

9

burden. The Court finds that the documents are clearly relevant to the parties' claims, counterclaims, and defenses, as the veracity of FMC's invoices and whether each particular service was performed are some of the crucial issues in the lawsuit. Plaintiff's Petition alleges that Asset Management received invoices from FMC for each transaction and that Asset Management breached its contract with FMC by failing and refusing to make payment on certain invoices. One of Asset Management's defenses is that FMC's breach of contract claim is barred by the doctrine of unclean hands, in that FMC allegedly charged for services that were not performed, for services that were duplicative and unnecessary, and at rates that that did not reflect the rates actually charged by FMC and third-party vendors to whom FMC assigned the work.[19] The Court finds that the requested third-party invoices and other documents would be directly relevant to these allegations.

In addition, Asset Management has asserted counterclaims for fraud, breach of contract, and professional negligence, which are based on allegations that FMC "engaged in a pattern of including improper charges on its invoices."[20] More specifically, in its fraud counterclaim, Asset Management alleges that FMC made untrue statements of fact on its invoices regarding services allegedly performed by itself, third-party vendors, and local counsel, along with untrue statements of fact regarding rates charged by the third-party vendors and local counsel.[21] Asset Management also asserts in its professional negligence counterclaim that FMC breached its professional duty by billing for services that were unnecessary and "performed only to inflate FMC's bills."[22] In its

---

[19] First Am. Answer & Countercl. (doc. 83), Defenses, ¶ 4.

[20] Mot. to Compel (doc. 27) at p. 5.

[21] First Am. Answer & Countercl. (doc. 83), ¶ 31.

[22] *Id.*, ¶ 39.

breach of contract counterclaim, Asset Management alleges that FMC charged rates that do not reflect the rates actually charged by FMC and third-party vendors.[23]  Clearly, the requested invoices and related documents would show the factual basis for FMC's charges and would be directly relevant to Asset Management's counterclaim allegations.

The Court is not persuaded by FMC's argument that the requested documents are irrelevant because the parties' contract was a flat fee contract and not a cost-plus contract.  The nature of the contract between the parties and its terms are in dispute, and are at the heart of this lawsuit.  Asset Management is not, during the discovery stage of this lawsuit, required to prove that the parties' agreement was indeed based on a "cost-plus" agreement, and the Court is not in a position to determine the nature of the parties' agreement in the context of a motion to compel.  As noted above, a party is not required to establish a prima facie case in order to entitle it to discovery regarding facts that may support its allegations or defenses and which may lead to the discovery of admissible evidence.[24]

In sum, the Court finds that the requested invoices and related documents concerning the services performed by third parties and billed or invoiced to Asset Management are relevant and are likely to lead to the discovery of admissible evidence.  The Court therefore overrules FMC's relevance objection to Request No. 8.

>   2.   *Overbreadth, vague, and ambiguous objections*

In its response to the Motion to Compel, FMC does not reassert its overbreadth, vague, and ambiguous objections.  Nor does it reassert its objection that many of the documents are not in its

---

[23]*Id.*, ¶ 44.

[24]*See, supra*, note 10.

possession, custody, or control.  The Court will treat these objections as abandoned, and need not consider them.[25]

### 3.    *Undue burden and shifting the cost of production*

The Court will now turn to FMC's objection that Request No. 8 is burdensome and oppressive.

### a.    *The standard for determining undue burden*

The party asserting undue burden in response to a discovery request has the burden to support its objection, by showing not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.[26]  This typically requires providing an affidavit or other evidentiary proof of the expense or time involved in responding to the discovery request.[27]  At the very least, the objecting party must provide a "detailed explanation" as to the nature and extent of the claimed burden or expense.[28]

### b.    *The parties' arguments*

Here, FMC asserts that responding to this request would require the production of "thousands of invoices . . . from a multitude of vendors for hundreds of [Asset Management]

---

[25]When ruling on a motion to compel, the Court will consider only those objections that have been timely asserted and then relied upon in response to the motion to compel.  *Moses v. Halstead*, 236 F.R.D. 667, 672 n.8 (D. Kan. 2006); *Cardenas v. Dorel Juvenile Group, Inc*., 232 F.R.D. 377, 380 n. 15 (D. Kan. 2005).  Objections initially raised but not relied upon in response to motion to compel will be deemed abandoned.  *Moses*, 236 F.R.D. at 672 n.8; *Cardenas*, 232 F.R.D. at 380 n.15.

[26]*Cardenas v. Dorel Juvenile Group, Inc*., 232 F.R.D. 377, 380 (D. Kan. 2005); *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 666 (D. Kan. 2004).

[27]*Cardenas,* 232 F.R.D. at 380; *Swackhammer*, 225 F.R.D. at 666.

[28]*Manning v. Gen. Motors,* 247 F.R.D. 646, 654 (D. Kan. 2007); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 209 F.R.D. 208, 213 (D. Kan.  2002).

foreclosure files."[29]  In support of its burdensome objection, FMC explains:

> FMC estimates it will take well over 2,000 hours to search its storage facilities, locate the appropriate boxes and files, and go through every one of FMC's invoices over a 2-year period.  Complicating that task is the fact that the invoices frequently contain charges for multiple FMC clients' properties.  Every charge on the invoices will  have to be cross-referenced per specific client and property, so that other clients' confidential information from those invoices that also contain [Asset Management]-related charges may be redacted.[30]

FMC argues that two thousand hours is a burdensome and oppressive amount of time to spend in document production on a case involving only a $150,000.00 claim.  It asserts that the cost of providing theses documents clearly outweighs their limited value.  Although FMC argues that the discovery should not be had at all, it does request, in the alternative, that the Court assess the costs of producing these documents against Asset Management.

Asset Management counters that FMC has not met its burden of providing evidentiary support, or even a "detailed explanation" of the nature of the burden and expense.  It also argues that FMC's "[p]ossible inefficient storage methods or failure to collate its records" is a sufficient basis for refusing to produce the documents.[31]  Finally, it argues that shifting the cost of production is inappropriate, as  FMC has failed to show why the general presumption — that the cost of the discovery should be borne by the responding party — should be shifted in this case.

> c.    *Analysis*

The Court finds that FMC has failed to adequately support its undue burden objection.  As a preliminary matter, FMC fails to provide the Court with any *evidence* showing the expenditure of

---

[29]Resp. to Mot. to Compel (doc. 35) at p. 4.

[30]*Id.* at pp. 4-5.

[31]Reply in Supp. of Mot. to Compel (doc. 47) at p. 7.

time, effort or money that would be necessary to produce the requested documents.  While FMC has provided an "estimate" that it would likely take 2,000 hours to search its storage facilities, locate the appropriate files, and search the invoices, this explanation is not detailed enough to convince the Court that such a search would result in the expenditure of great labor, great expense, or considerable hardship to FMC.  Even assuming arguendo that FMC had submitted evidence to demonstrate such a burden or hardship, FMC has failed to establish that the burden or hardship would be undue and disproportionate to the benefits Asset Management would gain from the document production.  As discussed above, the Court finds the requested invoices and related documents to be directly relevant and important to establishing Asset Management's defenses and counterclaims.  Thus, the Court declines to deny the Motion to Compel based on undue burden.

The Court will now consider FMC's request that the cost of producing these documents be shifted to Asset Management.  Under the discovery rules, "the presumption is that the responding party must bear the expense of complying with discovery requests."[32]  Notwithstanding this presumption, a court has discretion under Rule 26(c) to condition discovery on the requesting party's payment of the costs of the discovery.[33]  In making such a determination, courts often consider the factors set forth in Rule 26(b)(2)(C)(iii),[34] which are whether "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy,

---

[32]*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)).

[33]*Id.; see also* Fed. R. Civ. P. 34, advisory committee note, 1970 Am. ("[C]ourts have ample power under Rule 26(c) to protect respondent against undue burden or expense, either by restricting discovery or requiring that the discovering party pay costs.").

[34]*See, e.g., Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 571 (N.D. Ill. 2004) (citing Fed. R. Civ. P.26(b)(2)(C)(iii)); *Hagemeyr N. Am., Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 600 (E. D. Wis. 2004) (citing Fed. R. Civ. P.26(b)(2)(C)(iii)).

the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."[35]

Taking into consideration these factors,[36] the Court finds that it would be appropriate to apportion the costs of this discovery equally between FMC and Asset Management.  The parties are directed to confer to determine the most cost efficient method for production of these documents.

### 4.    Conclusion

In summary, the Court overrules FMC's relevance and undue burden objections to Request No. 8.  In addition, the Court finds that FMC has abandoned its overbreadth, vague, and ambiguous objections to Request No. 8.  Accordingly, the Court grants the Motion to Compel as to Request No. 8.  The Court, however, directs that the cost of FMC producing documents in response to Request No. 8 shall be borne by both FMC and Asset Management in equal amounts.  The parties are directed to confer to the determine the most cost efficient method for producing the documents responsive to Request No. 8.  FMC shall produce the documents sought in Request No. 8 within **thirty (30) days** of the date of filing of this Order.

### C.    Request No. 9

Request No. 9 asks FMC to produce the following:

[A]ll documents FMC may use to evidence the validity of charges on FMC's invoices to Asset Management, including but not limited to records of time worked,

---

[35]Fed. R. Civ. P. 26(b)(2)(C)(iii).

[36]Here, FMC's claim is for approximately $150,000.00.  Asset Management's First Amended Answer and Counterclaims (doc. 83) do not specify the amount of damages Asset Management seeks for each counterclaim; however, in the parties' proposed Pretrial Order, Asset Management asserts that it has paid FMC approximately $450,000.000 and alleges that it paid FMC $80,000.00 for "overbilled fees and costs."  It also alleges in the Proposed Pretrial Order that the "[a]pproximate loss caused by FMC's mismanagement of certain foreclosures is $338,322.44."  Proposed Pretrial Order, ¶10.b.

types of work, charges by third-parties, agreements between FMC and third-parties for amounts charged by third-parties, and agreements or other communications between FMC and Asset Management concerning amounts to be charged for specific types of work.

FMC objected to this request on grounds that it is overly broad and "unduly vague." It also objected on grounds that the requested documents are irrelevant and the request is not calculated to lead to the discovery of admissible evidence, because Asset Management does "not allege the existence of a cost-plus contract." FMC then stated that, to the extent the request is not objectionable, it would produce responsive documents. FMC did not object on the basis of undue burden or oppression, as it did with respect to Request No. 8.

### 1. Relevance

The Court will first consider FMC 's objection that the requested documents are irrelevant and not calculated to lead to the discovery of admissible evidence. The parties make the same relevance arguments that they made with respect to Request No. 8, and, in fact, make no distinction in their discussion or analysis between the two requests. For the same reasons discussed above, the Court finds that the documents sought in Request No. 9 are relevant and may lead to the discovery of admissible evidence.

### 2. Undue burden and shifting the costs

Although the parties discuss whether this request is unduly burdensome and whether the costs of producing these documents should be shifted to Asset Management, FMC never asserted an undue burden objection to this particular request. Because undue burden was not asserted when FMC responded to the request, FMC has waived the right to assert it now.[37] The Court therefore

---

[37]It is well settled that any objections to discovery requests which are not timely asserted are deemed waived, unless the responding party establishes good cause to excuse its failure to timely object. *See, e.g., Lipari v. U.S. Bancorp., N.A.,* No. 07-2146-CM-DJW, 2008 WL 2704473, at *1, n.2 (D.

declines to grant the Motion to Compel based on undue burden.

### 3.    FMC's remaining objections

FMC also objected to this request on the basis that it is overly broad and "unduly vague." In its response to the Motion to Compel, however, FMC does not reassert those objections. The Court will treat these objections as abandoned, and need not consider them.[38]

### 4.    Conclusion

As the Court has overruled FMC's objections to producing the documents requested in Request No. 9, the Court grants the Motion to Compel as to this request. FMC shall produce the requested documents within **thirty (30) days** of the date of filing of this Order.

## D.    Request No. 10

Request No. 10 asks FMC to produce "all communications and agreements between FMC and any 'local' attorney performing services related to Asset Management's properties." FMC responded to this request as follows:

> FMC objects because this request is overly broad, burdensome, and no[t] calculated to lead to the discovery of admissible evidence because it encompasses communications and agreements between FMC and its "local" attorneys on matters not related to [Asset Management's] properties. To the extent it requests communications and agreements between FMC and its "local" attorneys regarding [Asset Management] properties, these documents will be produced, except that FMC objects to disclosing the fee agreements between FMC and "local" attorneys because they are irrelevant and not calculated to lead to the discovery of admissible evidence

---

Kan. July 8, 2008) (objections to requests for production waived when not asserted in a timely response to the requests); *Brackens v. Shield*, No. 06-2405-JWL-DJW, 2007 WL 2122428, at *1 (D. Kan. July 20, 2007) ("[I]n the absence of good cause to excuse a failure to timely object to interrogatories or requests for production of documents, all objections not timely asserted are waived."); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan.1999) ( "[The Court] deems objections not initially raised as waived . . . . The waiver or abandonment of objections also precludes their later assertion in a supplemental response.").

[38]*See, supra,* note 25.

because [Asset Management] did not allege the existence of a cost-plus contract.

In its February 22, 2008 "Golden Rule" letter to FMC, Asset Management agreed to modify this request to seek only those "communications and agreements between FMC and any 'local' attorney *concerning the performance of services* related to Asset Management's properties."[39]  The parties provide their arguments as to this modified version of the request.  The Court will therefore determine the validity of FMC's objections in light of the modified version of the request.

### 1.  Production of communications

The Court finds the Motion to Compel to be moot as to the requested communications.  This topic was the subject of the Court's July 11, 2008 Memorandum and Order (doc. 88).

### 2.  Production of fee agreements

#### a.  Relevance

In support of its relevance objection, FMC asserts that the local attorneys (or third-party law firms, as FMC refers to them), contracted with FMC directly to handle files for not only Asset Management, but for all of FMC's other clients.  FMC asserts that all matters for all clients were handled under the same contracts. It then reiterates its argument that its contract with Asset Management was based on a set fee schedule for services, with only fixed costs such as sheriff's fees, filing fees, and overnight delivery to be passed through at cost to Asset Management.  FMC thus argues that the fee agreements with its third-party attorneys who performed work on Asset Management's properties and how much FMC may have paid a third-party attorney to provide a particular service for Asset Management are not relevant and have no bearing on the amount or legitimacy of any of FMC's charges to Asset Management.

---

[39]Feb. 22, 2208 Letter from Asset Management's counsel to FMC's counsel, attached as Ex. C to Mot. to Compel (doc. 27) (emphasis in original).

Asset Management argues that the fee agreements between FMC and its third-party attorneys are relevant because they will show the factual basis for FMC's charges to Asset Management for legal services provided, and, thus, relate directly to Asset Management's defenses and counterclaims. Asset Management also argues that the fee agreements would reveal who performed legal services on its behalf and whether the legal fees were improperly split with non-lawyers. According to Asset Management, if FMC engaged in improper fee splitting, it would require FMC to disgorge its improper fee and provide restitution to Asset Management pursuant to Asset Management's professional negligence claim.   Finally, Asset Management maintains that the documents will reveal whether the legal services were performed at all and whether the services were reasonably necessary in light of the circumstances of each particular property, which would also be relevant to its professional negligence claim.

The Court agrees with Asset Management, and finds that the fee agreements sought in Request No. 10, as limited by Asset Management in its February 22, 2008 letter to only those fee agreements *concerning the performance of services related to Asset Management's properties*, are relevant and likely to lead to the discovery of admissible evidence.   The Court therefore overrules FMC's relevance objection to Request No. 10.

### b.      Remaining objections

FMC also objected to Request No. 10 as being overly broad and burdensome.   In its Response to the Motion to Compel, however, FMC failed to support those allegations.   While it asks the Court to sustain its objection to disclosing the third-party law firm fee agreements "as overly broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence,"[40]

---

[40]Resp. to Mot. to Compel (doc. 35) at p. 7.

it provides no argument or discussion in support of its overbreadth and undue burden objections. The Court therefore deems these objections to be abandoned, and will not consider them.[41]

3.  *Conclusion*

The Court grants the Motion to Compel as to Request No. 10, to the extent it asks FMC to produce *agreements* between FMC and any local attorney concerning the performance of services related to Asset Management's properties.  FMC shall produce these agreements within **thirty (30) days** of the date of filing of this Order.  The Motion to Compel is moot to the extent Request No. 10 asks FMC to produce *communications* between FMC and its local attorneys.

## III.   Award of Fees and Expenses

Asset Management makes no request to recover the fees or expenses it has incurred in connection with its Motion to Compel.  The Court must nevertheless consider whether to make such an award.

Federal Rule of Civil Procedure 37(a)(5) governs the award of fees and expenses in connection with motions to compel.  Subsection (C) of Rule 37(a)(5) applies when the motion to compel is granted in part and denied in part, as in this case.  It provides that after giving the parties "an opportunity to be heard," the court may "apportion the reasonable expenses for the motion."[42]

To satisfy the requirement that the parties be given an "opportunity to be heard," the Court directs FMC to show cause, in a pleading filed within **forty-five (45) days** of the date of filing of this Order, why it should not be required to pay all or a portion of the reasonable expenses and attorney' fees Asset Management incurred in making the Motion to Compel.  Asset Management

---

[41]*See, supra*, note 25.

[42]Fed. R. Civ. P. 37(a)(5)(C).

shall have **ten (10) days** thereafter to file a response thereto, if it so chooses.  In the event the Court determines that expenses and fees should be awarded, the Court will issue an order setting forth a schedule for the filing of an affidavit reflecting the amount of expenses and fees that Asset Management incurred, and for the filing of any related briefs.

**IT IS THEREFORE ORDERED** that Defendant/Counterclaimant Asset Management Holdings, LLC's Motion to Compel Production of Documents (doc. 27) is granted in part and denied in part as set forth herein.

**IT IS FURTHER ORDERED** that all documents required to be produced as a result of this Order shall be produced by Foreclosure Management Co. within **thirty (30)  days** of the date of filing of this Order.

**IT IS FURTHER ORDERED** that the cost of Foreclosure Management Co. producing documents in response to Request No. 8 shall be borne equally by Foreclosure Management Co. and Asset Management Holdings, LLC, and the parties shall confer to determine the most cost effective method of production.

**IT IS FURTHER ORDERED** that Foreclosure Management Co. shall, within **forty-five (45) days** of the date of filing of this Order, show cause in a pleading filed with the Court, why it should not be required to pay the reasonable fees and expenses that Asset Management Holdings, LLC incurred in making its Motion to Compel.   Asset Management Holdings, LLC shall have **ten (10) days** thereafter to file a response thereto.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas this 12th day of August 2008.

s/ David J. Waxse
David J. Waxse
U. S. Magistrate Judge

cc:     All counsel and pro se parties